Good morning. May it please the court, my name is Molly Coe and I'm appearing on behalf of the Attorneys, the City of South Charleston, Officers Miller Could you pull that microphone down a little bit toward you? Is that better? Officers Miller and Detectives Moyer and Peterson, we contend that the lower court erred in finding that they submitted facially invalid arrest affidavits in support of an arrest warrant for the plaintiff, and further finding that because of the invalidity of the warrant, they were not entitled to qualified immunity despite the fact they had a reasonable belief that probable cause existed for both the arrest, the application for the warrant and for the arrest. The court granted the plaintiff's summary judgment on the deficient affidavit claim, indicating that the affidavit at issue, we can talk about the first or both, but that the affidavits at issue lacked any indicia of probable cause as it applied to the plaintiff. I think if you look at the affidavit, they are far from a bare bones affidavit. The courts have generally held, contained conclusions or simply do not state any facts with regard to the crime alleged. I think you'd do better to pass over that right now and go on to your thesis that the arrests were still reasonable because the officers had probable cause. Yes. The district court didn't complete that analysis. Certainly. Since it was an arrest in public, objectively, it didn't conduct the objective question of whether there was probable cause for the arrest. True, Your Honor. The appellants maintained that there was probable cause for the arrest regardless of whether the allegations in the affidavit were deficient. Can I just, I'm sorry, I know that you're answering Judge Niemeyer's question, but so are you arguing that even if those affidavits were officially deficient and no reasonable officer could have thought otherwise, there's no cause of action for that standing alone, that the district court was wrong in thinking that there was a deficient affidavit claim in this case? Defendants are arguing, first, that we don't believe it's a deficient affidavit. And second, even if there was some sort of defect in the affidavit, they still had probable cause to apply for the arrest and then to arrest. I understand that, but the way the district court framed this, that goes to the malicious prosecution claim. But the district court thought that there was a freestanding claim under the Malley case, simply for the fact that two officers went to a magistrate and handed in, basically, a facially deficient affidavit. And I didn't catch you guys contesting that in the district court. As far as I know, Malley is still good law, although I know that the court pointed out that we did not raise that there is no such thing as a Malley claim. Right. I think the law is unclear in this case. We believe it was an innocent mistake and negligence. But that doesn't answer Malley. Malley dealt with the home where you would have to have a warrant to make it reasonable. The question is, there was an arrest in the home, right? Well, Malley... In other words, the question is, is the warrant necessary to make the arrest reasonable in the factual circumstance of a given case? If the warrant is not necessary to make it reasonable because there was independent probable cause to make the arrest, then you have the graves situation that came out of Sixer. And there the court held that the Malley case alone is indicative of whether there's reasonableness, but doesn't preclude... You still have to conduct the analysis under the Constitution as to whether it was unreasonable. Yes. But that doesn't diminish Malley. Malley is fine. I mean, it's a Supreme Court case, and it's fine on its facts and its whole. Yes, I completely agree. In this case, these officers, based on the videotape alone, we contend, based on the videotape alone, which, upon viewing any reasonable officer, could have determined that there was probable cause to believe that the plaintiff was committing a crime, could have arrested the plaintiff in public without a warrant. The way the court has determined this issue, if these officers would have been better off to have not gone the extra step and applied for an arrest warrant, they would have been better off to simply arrest the plaintiff based on the probable cause that they believe they have. I don't think that it is the state of the law... But they didn't. Pardon me? They didn't. They did pursue a warrant, didn't they? They did pursue a warrant in this case, but I don't believe they would have had to, because they had independent basis for believing they had probable cause to arrest the plaintiff. They believed that he was... That's the objective prong, and the district court never conducted the analysis, which it never looked at the tape. Exactly, Your Honor, which is why I brought that up in our brief. I thought it was so important under Scott v. Harris that this court and the district court looked at what Officer Miller and the other two detectives looked at that caused them to believe that they had probable cause to believe that a plaintiff had committed a crime. When the issue comes down to, I gather, what you're saying, the issue would come down to, does a deficient affidavit destroy the otherwise constitutional probable cause that the officers have? Yes, it would be our contention that the seizure occurred at the time of the arrest, and at the time of the arrest we had reasonable belief that there was probable cause, and in fact had reasonable belief the time that we applied for the abhorrent but made a drafting error. Well, it's more than a drafting error. It was just slumped. If they had described in detail what was on it or showed the magistrate the tape, you wouldn't be here. I don't think you can defend the first affidavit. The second you might be able to, but the first affidavit, to me, is a deficient affidavit, don't you think? Well, Your Honor, if you look at the affidavit, I'm not sure that it is. Is it sloppy? Is it sloppy? Absolutely. Is it negligent? Maybe. Is it exculpatory? Doesn't it exculpate the defendant? Your Honor, that is a characterization that the district court adopted from plaintiff's briefs. Well, I'm sorry. I read the affidavit. I read it the same way. It appears to say that the defendant was distracted by one of the two people engaged in a robbery. How is that not exculpatory? No. I'm not saying that it did not appear to be exculpatory. However, that begs the question, why would any reasonable officer who was attempting to arrest a plaintiff based on what they believed was probable cause put in an exculpatory statement? He misspoke. He meant to talk about distracting others, but he said Robin was distracted. And so the effect of the affidavit, I don't think you can defend it. Well, Your Honor, if you look at it and assume that it was a drafting error, he was trying to show, and this is in the affidavit, that the defendant or he was unable to speak English, the question is, he had probable cause, and the question is, does the fact that he submitted a deficient affidavit based on the fact he reasonably believed he had probable cause, does that vitiate the probable cause that he otherwise had for a constitutional analysis? And your argument has to be there's a subjective component, which the officer reported in his affidavit, and there's an objective component. And the objective component was never analyzed by the district court. Your Honor, that is the argument? Yes, it is. Let me ask you a question about, two questions about the videotape. Is the record clear that the officers viewed the videotape before they submitted the affidavit? All the officers testified that they viewed the videotape before they submitted the affidavit. And what did the district court say about that? The district court at one point questioned Miller's interpretation of the affidavit, or the video, based on what was contained, the exculpatory statement in the warrant affidavit. Yet, it's an objective standard. No, I know it's an objective standard. And I had a little trouble understanding that part of the district court's opinion. Just with cards on the table. But I did think you could read it as saying not that it wasn't really a subjective inquiry he was doing. That he was saying, given what you said in the hearing, given what you did and didn't put in the affidavit, I don't know what you actually saw. I don't know how much of the videotape you watched. Maybe all you did was say he's on the scene. I saw that he was on the scene, so I wrote out the affidavit. I don't know what you saw, not what you thought. Well, that goes back to the one sentence that's a problem, Your Honor. If either of the two magistrates had noticed it, if Miller had noticed it, he could have fixed it to say... He could have. I mean, I could put it very well. Why would any reasonable officer submit an affidavit like this? I don't know the answer to that question. But for whatever reason, he did. And so there is nothing in that affidavit to convince this district court judge of what... When they looked at the videotape, how much of it they watched, what they perceived as a factual, objective matter. And certainly it could have been better described, but they do not have to show more than a reasonable belief that the plaintiff committed a crime. Just as a jurisdictional matter, so we're here on interlocutory review of the denial of summary judgment. So to the extent the district court sort of rested on a proposition that there are outstanding factual questions in this record, that's not something we can review, right? Well, Your Honor, I think that you are correct that you are not supposed to delve into the facts as the court found them. You mentioned that we didn't have probable cause, that we didn't review the videotape. You have to have more than merely a statement saying, oh, we don't believe that. But what the district court relied on was that the officers didn't mention anything that they saw on the videotape that provided probable cause, either in the affidavit or at the hearing, right? And so the district court said that's what creates the fact question. Well, Your Honor, I'm not sure that there was an actual hearing in West Virginia. I believe that the magistrate just reviews the original probable cause hearing after the arrest. Oh, right. At the probable cause hearing after the arrest, and after which arrest, actually? I don't remember which arrest. I'm sorry. I thought the district court found that there was a factual question, not because the plaintiff just said I don't believe it, but because the officers did not mention anything they saw on the videotape that would rise to the level of probable cause, either in the affidavit or at one of the probable cause hearings. Your Honor, the officers were never called to testify at either hearing. The officers, Moyer and Peterson, appeared. They were subpoenaed at the last hearing. The prosecutor called only Paul Hagenbach, who was the asset protection manager of Warren. The prosecutor had the videotape. Right. So right here, this argument is not this argument. This discussion, I think, is what we can't review on interlocutory review, whether the district court was right or wrong in thinking that this record gave rise to a material issue of fact on this question. I think that is not something we can look at. Well, I think that this court can look at it to the extent that the court erred in finding that there was a material issue in dispute. Summary judgment standard is that they have to show some evidence more than an imprint. And there is no evidence that we didn't look at the videotape, that we didn't have Hartwell's statement. Your Honor, my time is up. Mr. McLaughlin. Good morning, Your Honor. Mr. McLaughlin, you heard Judge Neumeier's summary of the law and counsel's endorsing it. I think you need to respond to that. The standard of review here on an interlocutory appeal court? The whole idea that we don't need to look at the warrant at all. My mistake. My mistake. You didn't hear that? Surely I did hear Judge Neumeier's summary of the law. Surely the act of obtaining a warrant is a constitutionally significant act. It may be that the ultimate arrest was made by somebody in possession of the facts who didn't need a warrant. My suggestion wasn't that it was not insignificant. As a matter of fact, it's very relevant for getting a warrant. My question was, if you could arrest somebody on probable cause, and you go to get a warrant on a deficient affidavit, that fact alone does not render the arrest constitutionally unreasonable. And the Supreme Court articulated that way back in Whiteley, but the more recent case that lays it out in spades is the Graves case out of the Sixth Circuit. They conduct the analysis, and they say, sure, it's relevant to determine reasonableness. The fact you get a warrant, what you say in the warrant, that's all right. But if you have a situation where the officers had a reasonable belief that they had probable cause, the objective evidence supports that, and then the officers submit an affidavit that's deficient, does the deficiency of the affidavit eliminate the probable cause that supported the reasonableness of the arrest? And the Sixth Circuit, Graves said it does not. And the Supreme Court in Whiteley implied the very same thing. I understood the distinction. What I meant by the act of obtaining a warrant is a constitutional statement. It's a constitutional injury. It is an act that then not only could Mr. Truman Miller go out and do an affidavit. But it does not render the deficient affidavit when somebody could be arrested on probable cause in public. The affidavit supporting the warrant does not override. In other words, it is not sufficient for an unreasonableness finding. You have to make the additional finding that that made the arrest unreasonable under the Constitution. We're talking about the arrest now. What I'm suggesting, what I'm saying is that the act of obtaining a warrant, regardless of who makes the ultimate arrest. So in the scenario that we're describing, I think we agree, or I hope we agree, so Truman Miller files a deficient affidavit. No, let's stick with the law. Let's assume it's a deficient affidavit. It's a deficient affidavit. Does that automatically render the arrest unconstitutionally unreasonable? No. I don't know that it renders the arrest unreasonable. It renders the act of seeking a warrant unreasonable. And that act of seeking and obtaining a warrant is itself a constitutional violation and a constitutional injury that's subjected him to arrest by any police officer. The Constitution talks about the unreasonableness of a seizure. And the Supreme Court has said you have to take that additional step of concluding that the deficient affidavit or any other process rendered the arrest or the seizure, search or seizure, unconstitutional, which is unreasonable. And that's what the Sixth Circuit said. Now, the question is, is there a circumstance where the deficient affidavit of itself would create an unreasonable seizure? And the answer is yes, because when you search a home, you need to have a warrant. And if you don't have a deficient warrant, then it's unreasonable. But when you have objective evidence that supports public cause for arresting the public, it doesn't necessarily render it unreasonable. You have to make that additional conclusion whether the objective evidence supports the fact that the officer arrested And the whole issue is the arrest under the Constitution. My position is that the whole issue is not the arrest. The arrest is certainly an important component of his injury, but the Constitution itself speaks directly to the procedure under which warrants shall issue and requires that probable cause for the warrant should be stated by oath in order to obtain it. Let me ask you this. What if a warrant is not needed at all? The Constitution reads on that factual assumption, if a warrant is not necessary at all, but the officer still gets it, then the question is, is the seizure unreasonable? And that is the only question, unreasonableness under the Constitution. And that's been reiterated again and again. A warrant may not be necessary for an arrest by an officer possessed of certain facts, but the act of obtaining a warrant means that Gregory Robinson and anybody else is subject to arrest by any officer pursuant to that warrant. And that itself is constitutionally significant, and the Constitution protects against that. If the warrant was necessary for the arrest, you're absolutely right, because that's the only means justifying the arrest. But if the warrant was gratuitous and was deficient, but nonetheless the officer had probable cause, you still have to ask the question, was the arrest unreasonable? But the act of obtaining a warrant meant that Gregory Robinson was subjected to being arrested by people other than Patrolman Warren Miller, other than the patrolman who allegedly, or claims that he reviewed the videotape, claims that he saw it. There's no dispute about that. They all looked at it. They looked at the video, and I can tell you I've looked at it about half a dozen times, and it seems to me that these officers and the Walmart people, which I believe is where this meeting was, showed it to them when they came over, and then the second group of officers looked at it again. I think there's a fact question as to whether. I think there's a genuine dispute as to whether the officers looked at it. They said that they did. When we start taking, because a party in a lawsuit said something in a deposition, that's a fact. Do you have any evidence to suggest that Miller did not look at the videotape? That he did not give anywhere an independent account for that videotape. He completely copied it from Walmart's security officer, Paul Kigginbotham's account that he provided to him, that he provided to Officer Miller. That's evidence that he didn't review it. The second officer clearly didn't review it. I think there's the evidence. They said that they did. Well, okay, they said that they did, but there's no evidence. They didn't write down anything in the notes about having reviewed it. And like I said, if we start saying there's no fact question because the only person that can answer that question is a party and testified in a self-serving manner that in fact they did the thing that they should have done, then we can dispense with the jury system. There's clear evidence that he didn't review the videotape. He didn't give an independent account of it at any point in time. And the other officers, in their notes, said nothing about having done any work in this case. And do I understand then your argument depends on the fact that there's a factual dispute whether Miller looked at the tape? No. Because I think, so we go first to the Walmart security officer, Paul Kigginbotham. He gave an independent, he did review the videotape. And in his review of the videotape, his initial review of the videotape on July 11th, he recounted his findings, what he saw. This is the person who works at Walmart, knows the layout, knows what the employees are supposed to be doing, knows what they're supposed to be doing when customers approach the desk, knows if they're supposed to be checking around periodically to see if customers are approaching the desk, and knows what paperwork they'd be looking through. And knows where that security camera is and watches that security camera. His independent review is, it's 780 in the Joint Appendix. And that's the review, his initial review, his notes from his initial review on 780 are expulsatory for Gregory Robinson. He says, Davis approached Robinson and distracted him. I have watched the videotape myself many times. One of the things, they're now saying that Robinson distracted a customer who approached the desk. He stood, this is, we'll imagine that this is the counter. Hartwell's under there getting the iPods out. And a customer approaches, and Mr. Robinson stands behind him and answers the customer's question. I can't see in any way how that's distracting him. He's positioning himself in the line of sight of the customer. Mr. Higginbotham, the person who first, who recorded, clearly recorded, took the notes that then got copied by Officer Miller and then got copied by Officers Peterson and Moyer with a slight change to make it less expulsatory with respect to Greg Robinson. Detective, I mean, Paul Higginbotham, his initial review was Robinson was distracted by Davis. Davis was implicated. His initial report, and it hasn't made it into this record, but Mr. Robinson had a case against Walmart. And there's a lot of testimony, and those witnesses are available to be called. It is clear that initially, when he initially wrote this up, there's a suspect and persons acting in concert. And his initial review of it was suspect Jeremy Hartwell, persons acting in concert, Gerard Davis. Not Gregory Robinson. A couple days later, or a day or two later before, so the incidents happened on July 10th and 12th. He reviewed the videotape on July 13th. He entered his notes around July 13th on 780. His initial review was, that's JA 780, was that Davis was distracted by Robinson. He later changed that position without changing his notes. I don't know why he reviewed the videotape. Well, I do know why, but it's not in the record file. Can I ask you a question about the videotape? Yes. I'm following along closely. It is, I do find that this seems like an odd posture. We've all watched the videotape, and the district court judge apparently hasn't. Would you have any objection to sending this case back to the district court, and asking the district court to go ahead and look at the videotape, and then decide as part of the summary judgment record, does he still think that there are these outstanding mutual issues that preclude summary judgment on a qualified immunity? I think that, the answer is I don't have an objection to that. I still think that the petition affidavit claim and findings that stand apart from that. And on that question, let me ask you, I think this is a complicated area of the law, this idea of whether there's a freestanding claim on swearing out, obtaining a warrant for the facially deficient affidavit. The district court says nobody is challenging in this case that that is a freestanding claim. Does the defendant's waiver of that issue play any role in the way we should think about this? It is my general opinion that the defendants need to raise an issue on a deferred court. That is in fact the general rule. Yeah, that's the rule. And so, yes. I mean, I would still like, as a lawyer, I want people to decide what the right answer is. But yes, I think that that is correct. It was a waiver, yes. And so, I don't have an objection and an answer to your question. I do think that the evidence from the Walmart security officer looked at that videotape and did not see probable cause preserves that. It makes it a fact question. The Walmart security officer did testify that Mr. Robinson's probable cause hearing before a magistrate for Mr. Robinson had an adversary proceeding on probable cause. And on the basis of his description of the videotape to the magistrate in that preliminary hearing, the magistrate found there was not probable cause to find that Greg Robinson committed a crime. There was only, if anything, probable cause to say maybe Greg Robinson witnessed a crime being committed, didn't report it, and was guilty of being a disloyal employee, but not a criminal. There's other exculpatory evidence and evidence that's... There's other evidence. There's no connection in that case. I do not see any way that anybody can review that videotape and think that Greg Robinson was distracting anybody or assisting. I think you could say, you could look at it from whatever angle and think that maybe he saw him removing, saw him committing a crime. I think that there's a big step between an employee witnessing a co-worker committing a crime, a disloyal act, and an act for which he maybe should be terminated, but not a crime. And I think that that act is something that goes on much more frequently among the people who are upstanding, law-abiding individuals who do not want to... who do not want to get involved and report a co-worker on something like that. What's your answer to the Hartwell statement? It looks to me, it's undated, but it looks to me that the officer said he reported it to Higginbotham, and Higginbotham dictated a contemporaneous note in their file, security file, which is recorded to the hour and to the second of when he dictated it. It was probably some automatic mechanism, and he said, I was told today that Hartwell implicated the other two. Yeah, he was told on July 8th that Hartwell... He was told on July 18th, exactly. He was told on July 18th. And he arrested, and the warrant application was on the 19th. Okay, it may have been. There's a couple of things about Hartwell's statement. First, Officer Miller determined to arrest. It's clear from his own notes, and his notes are on 787. Officer Miller's notes relate to July 16th and 17th that he had planned to arrest, seek an arrest for Greg Robinson as of that date without having Hartwell's statement. He got it on July 18th. On what date is this? July 16th and 17th. Well, this is before he filed. We agree the application for the warrant was on the 19th. And so before he goes and gets the warrant, he clearly had already had in his possession the Hartwell statement. So let's talk about whether to what extent he would be, what are the facts that would go into an officer crediting or not crediting? He didn't have to credit it. My point is he had that information in Hartwell laid out in his statement in his own hand that the other two were helping him and he was going to pay them with an iPod. And you combine that with the tape, which I think is much more implicated than you suggest. You know, Robinson and Hartwell are sitting there talking. They're right at the counter. They're talking to each other. They both face each other. Then Hartwell goes down to the case while Robinson starts flipping pages to act as if he's not implicated. But the two are clearly working together. Davis then comes in while they're doing that in the picture. And he sort of stands guard the same way that he did during the first tape on the 10th. And so it seems to me, and then they all three walk away together. And it seems to me, and also right before they walk away, Hartwell hands Robinson something. It's a little black. I don't know what it is. He hands it to him and Robinson puts it in his pocket. I don't know what it is. The point is looking at that, it's pretty clear, and I would guess a jury would find without any doubt, that these three were working together. I don't see that Gregor Evans is talking to his co-worker before his co-worker is. That's what it shows. There would be evidence of conspiracy. I don't think co-workers are working together. They talk all the time. Gregor Evans looks up around the desk. Well, the two of them come in, and they're clearly together. They talk to each other. Then they go there. Robinson kneels down. I mean, Hartwell kneels down in front of the case, and Robinson starts flipping the pages. And every once in a while, Robinson goes like this. It seems to me. He looks around. Well, but the question is, would a reasonable person have the probable cause to believe they were working together? A Walmart security officer believed that Robinson was distracted by this. And I think a reasonable officer would not question why he did that. That's the Hartwell statement. Officer Miller, at the time that Hartwell made that statement, knew that it couldn't be true because he had – Hartwell also accounted for seven of eight iPods. And he's saying he had two. When did he say he gave two? When did he say he promised? He gave each. He promised each of them an iPod. Can you clarify something for me? And I may be misremembering or I misunderstood, but I thought the district court held that there was a material question of fact as to whether the undated Hartwell affidavit statement was reviewed by these officers before they submitted their search warrant affidavits. I thought the district court said that's a fact question. It's undated, and he's pointed to some other reasons why he thought that was a question. Am I wrong about that? He thought that the district court held that there was no fact question, and that absolutely they took Hartwell's affidavit to court. The district court, I think, said there was a question of fact before they reviewed it. And if the district court said that, that there was a material issue of fact in this record on that point, that's something we can review in this case here? I thought we didn't even do that. I didn't think we did not review that. Even if the record shows conclusively that it was obtained on the 18th? I would think that what the record shows about when, what report was given to, I think there are a number of questions of fact about what report was given by Miller to Higginbotham and when and what. It was dated 7-18 at 10-15 and 28 seconds. This is the statement that was dictated and said, on July 18, Paul Higginbotham was contacted by Officer Miller and advised me that he had made contact with electronic associate Jeremy Hartwell and currently had him in the South Carolina Police Department. He also advised Jeremy Hartwell admitted to the theft of the iPod, included two so-and-so. These units have, and then he refers to the statement that the other two were involved in the theft of merchandise property. And Officer Miller advised that he would be obtaining warrants for these individuals and serving their arrest on Wednesday, July 18, Thursday, July 19. The, first off, that's not an argument. It may blow up. Second off, it's an issue that... Well, it may not be... All of those things would have to be by him. There's a whole lot of... I don't understand. My only point is... Why? Let me just suggest my own point. ...is that if we look at the affidavit, it is woefully dim. And I agree with the questions put over to you by Mr. Harris that I think the first affidavit is full of lies. And it seems to me if that is the rise and fall of this case and there's a cause of action for just preparing that affidavit, then you've got a pretty good situation. But the Constitution only makes that a component of determining the reason for this. And while it provides the officer's subjective interpretation of the tape,  he said he reviewed it. I have it right open here, 176. And was looking at it, and they were discussing it together, Higginbotham and him, and they were watching the tape. And so he looked at the tape. He also had the statement of Hartwell. And the question is, would an officer even just looking at the tape be reasonable in having probable cause? And I think that's hard to dispute. Now, the district court didn't look at the tape. And the district court said there's a factual dispute about the statement because it's undated. But all you need to do is to look at the other evidence in the file, the objective evidence, and then conclusively Higginbotham was informed of the details, the details of the statement, the promises to give out units to the others and so forth, at 1025 in the morning on the 18th. So with respect to the – I think there's clearly a question of fact as to whether Miller certainly appears to inquire. They said that they did. I don't know what else they could say. I don't have a definition of that. 176 says, I reviewed the video myself. Okay, you looked at the video with Paul Wright then? Yes. Did you discuss the video while you were watching it? I'm sure we did. I can't tell you everything that was said. Your argument that that was a lie. I'm saying that we have juries that that is the specific, the most important part, thing that juries do, is determine whether parties are telling the truth when they give self-serving statements. That is a very fundamental thing that they're there to do. The evidence surrounding what he did, his notes and everything else, suggests that all he did was take what Paul Higginbotham had provided him and copied that into his notes. His notes similarly for Hartwell. Officer Miller's notes from his interview with Hartwell do not mention,  from Jeremy Hartwell, that implicated Davis and Robinson. He didn't mention it. It doesn't appear in the police report anywhere. It doesn't appear in his warrant affidavit that he submitted. I think we can all agree it would be the most useful piece of evidence for him to have included in his affidavit. And he didn't include it. I don't know when he took that statement. I don't know why he told Higginbotham what he told Higginbotham. But there is clear evidence that Paul Higginbotham, a Walmart security officer, originally viewed that case the way that I would, the way that I think a lot of people would, Robinson is there and present, but he's not doing anything. He doesn't distract or help anybody. I don't see how you could view that videotape as him distracting or helping anybody. There is subsequently a statement that's been produced. While he's turning those pages, he waves at somebody who's walking by like this. I did not see that action. Can I bring you back to this jurisdictional question? Because I am really wrestling with this. The district court says that the record is replete with issues of material fact as to what knowledge, if any, the defendants possess regarding probable cause of the time of arrest. That's a fact question. We have said several times that in this posture, we lack jurisdiction to review the district court's order insofar as the order determines whether or not the pretrial record sets forth a genuine issue of fact. How much of this can we review in this posture? I'm having trouble figuring out what's in front of us and what's not. I agree with you. I don't think that to the extent that he said that there's a material question in fact that any of it is properly reviewable here. I do want to make the point about the facts, nonetheless, that it is clear from my review of the videotape and from the record that Mr. Higginbotham, the person who should know best about what Robinson is or is not supposed to be doing at work, how employees interact with each other, how they do all of that thing, who's coming up, he wrote very clearly that Robinson was not involved. At some point that changed. And the reason that that changed, and we'll get into this a little bit, but these things happen in real life. The reason that changed is because, or that we would argue a trial if we had a trial, is because Walmart's manager, Higginbotham's boss, did not like Gregory Robinson and was looking for a reason to terminate him. That's the argument, that's the trial, and that the rest of this followed. Hartwell's, whatever Miller may have told to Higginbotham, Higginbotham may have reported on July 18th, I do not know. It did not make it into his warrant affidavit. That statement itself, the handwritten statement, is not dated. It could have been any time. It appears that nobody ever intended to rely on Hartwell to prove Robinson's involvement in the case. The statement is complete with factual, with verifiably inaccurate information about giving him an iPod. And those are questions of fact, just because the main witnesses, the people that were involved in this, George Skinner, the manager at Walmart, Paul Higginbotham, the security manager at Walmart, and the officers who work closely with Walmart on a regular basis with South Charleston Police Department, won't say it. Doesn't mean there's not a question of fact about it. Because there is. And that's what happened here. And the videotape itself does not give, and it has been held by multiple, so Paul Higginbotham said it, Paul Higginbotham testified at Greg Robinson's preliminary hearing in front of a magistrate, who said that, that is not what you are describing to me does not make him guilty of a crime. Let me ask you, do you agree that the district court should have conducted an objective analysis to determine whether there was an objectively probable cause? The court never made that determination. I think that he determined that the objective analysis to determine whether there was an objectively probable cause depended on finding, making determinations about facts that are committed to the jury. Who is the credibility of witnesses? No, no, no, no. The court never looked at the evidence that confronted the officer to determine whether, as a reasonable officer in that position, he had a reasonable belief that there was probable cause. And the district court never looked at the tape. So one thing that the district court said is that we don't know what was in front of the officer. There are questions in fact about that. And I want to make this last point, that even if I am in this... Calvin, you've been arguing a long time and you've been answering my colleagues' questions. It's not your fault. I'm lucky. Well, it's not your fault either. But can you address that aspect? Under this status we have now, can we let the summary judgment stand in light of the fact that the district court didn't look at the tape and didn't look at the question of whether or not, independent of the warrant, there was probable cause? If you can see that, how can we allow it to stand in the summary judgment? I think that it can be remanded with the instruction stand that it's not... I'm not asking what instructions we should or should not give. The question is how can it stand in the term, that aspect of it, the summary judgment, in light of the district court having looked at an independent question of whether or not there was probable cause, notwithstanding the warrant was totally invalid. I think that he did look at the question of whether or not there was probable cause. In his analysis, he said there's a fact question about what they actually, what information they actually reviewed prior to it. And what I was going to say to tie it all together, I think there's no question that Peterson and Moyer had no idea that Hartwell had ever given a statement at the time they arrested him. You would think that when they're there, the prosecutor would have known that Hartwell had given a statement. They know that Hartwell had given a statement. There's just no, there's absolutely no evidence. Did the tape exist at that time? The tape existed. There's no evidence that Peterson and Moyer... Do you think the tape is relevant as to the question of whether or not the officers independently had probable cause for the arrest? Is it relevant? Only if they reviewed the tape, it is. If they didn't, I think the question is whether they did. So you think there's a factual question whether they even looked at the tape? There certainly is with Peterson and Moyer. I think the evidence apart from their testimony is very clear that they did nothing. They just stepped into this case. Saw that he had, in fact, gotten an arrest warrant before. And that's just my thought. I thought the evidence showed that those two also looked at the tape. They testified that they did. There is no, what else are they going to say? I mean, you've got everybody in here to be a liar, and there's no finding a fact that they are liars. They don't, but the... We'll have a thing, and again... Counsel, weren't they under oath? They were, and I think that... You can't just whisk something away. They testified under oath that they looked at it. So that's part of the evidence. So then, in light of that, wouldn't the tape be relevant to answer the question for the trial of fact? And that's the question in jurisdiction. To determine whether they had an independent basis for their arrest. So the district court's answer to that question was... I know what the answer was. The question is, would the tape be relevant to make that determination? I think the answer would be different if you said... Well, I see I'm not going to get an answer. Do you have an answer? Thank you, counsel. I'm going to cut you off because you're not answering the question. No, no, go ahead. Answer the question. Do you not have an answer? Because you haven't answered it yet. I think it's relevant if you get there, and the district court... We are here. No, you are here because I'm asking you the question. Is it relevant to determine whether or not the officers had independent, reasonable, probable cause to make the arrest? Forget about the warrant. If they reviewed the videotape, it's relevant. If there's a question of fact about whether they reviewed the videotape, then it can be... It's certainly relevant, but it doesn't get there until... They testified that they did. They testified that they did. There's nothing in the record that disputes that, right? I think that there are notes from the police report that dispute that. They're handling up a case to dispute that. But even so, that's a factual question. That summary judgment may not be appropriate, correct? Yes. Yes. It would be factual. Those would be questions for the jury. So you agree that summary judgment should not be allowed here? Oh, I didn't mean summary judgment on that issue. I want summary judgment on the deficient affidavit claims. Those are legal questions, whether that's an independent claim. And one point that I would make, the last point, if I may be permitted, is that that's one of the evidence of the kind of injury that obtaining a warrant gives,  because somebody else had already obtained a warrant. And it would have been dismissed without prejudice. And I think that the facts of this case are clear that they didn't do any investigation at all. But I do. I'm sorry for the lack of clarity. So it's not your fault. Thank you, Counsel. Ms. Polk? Just briefly, I would like to respond to Judge Harris with regard to whether you can undertake a review of the facts. Now, I struggled with that question myself over and over and over again. As I understand, the standard for summary judgment is that the non-movement may not rest on mere allegations supporting his position. I'm asking a different question, though, because that is the standard if we were looking at this in a normal procedural posture. But when the question were not, this is sort of an interlocutory review of denial of qualified immunity. And there, we take a different approach and say if the district court held that on this record there is, in fact, a factual question, that is not something we review. We only review questions of law in this posture. If the district court erred as a matter of law in finding there were factual disputes, can you not? That is where I ended up, that you could review this, is that as a matter of law, the district court erred in finding there were factual disputes that prevented summary judgment for the defendants on qualified immunity. And that that was an error of law, because there was nothing in the record to support their point. And it's fine. See, I think we can review whether, in fact, this dispute is material, whether the district court was right that this matters, that we care whether or not the officers saw the Hartwell statement. But to the extent the district court said, I can't tell on this record there was a dispute as to whether they looked at the Hartwell statement, the question about the status of the record, I don't think we can get to in this posture. Well, but maybe we do. I don't want to take more of your time on this. OK. Your Honor, as to the video, all we need to show to be entitled to qualified immunity is that a reasonable officer looking at this video in a militant position would have believed there was probable cause to arrest the plaintiff. It doesn't have to show down the road that a jury's going to convict the plaintiff for being complicit in this crime or aiding and abetting. It just has to show that the officer reasonably believes that Robinson may have participated in a crime. That's where the officer's job stops, is that showing. But the question, though, is the video doesn't show Robinson stealing anything. No, it doesn't. It doesn't? You can't hear what he's saying, can you? No, you can't hear what he's saying. How do you determine distraction? Is distraction, as counsel was saying, was he looking for a customer? Or was he looking out as an accomplice? How can you tell from the video? How do you know that? You don't know for sure. It's whether, based on the video, a reasonable officer could believe that he was acting in concert to steal those eyeglasses. Because he was present. That's basically what it is. The video just shows present. No. Well, I disagree. I agree with you. I know you disagree. But it shows a lot more than that. It shows Robinson leaning down and talking to Hartwell while Hartwell is putting the iPods in his pocket. I thought that was he was talking to him before he started. My recollection of the video, and I've watched it multiple times, is that you can see him talking to him while he's kneeling down and putting the iPods in his pocket. So that makes it a crime because you saw a crime? The court has said, I think it was the Taylor case, that even innocent activity, merely being present, can give rise to probable cause. But not that alone. Not that alone? But even innocent activity, being present with him talking to Hartwell while he's pocketing the iPods, certainly gives rise to a reasonable... They came in together. They left together. They had communication before he started. He was going down. You're right. He leaned over and said something to him. He went and turned the pages. Davis comes in and stands just like he did the time before. And then when he gets the stuff, Hartwell hands something to, I don't know what it is, hands something to Robinson, and all three depart together. Now, the question is, would a reasonable officer believe that they were involved in a scheme together? And there clearly were knowing and together, and they were talking, and it's pretty clear to me that Robinson knew what Hartwell was doing. There's no question about it. So the question is, would a reasonable officer feel he was complicit? That's for the ultimate trier. But I can tell you, any jury looking at that would say these guys were working together. Your Honor, and complicit means anything, any step that is taking in furtherance of a crime. And certainly... And, of course, Hartwell confirmed all this. And certainly distracting people from seeing that a crime is being committed and trying to block security videos is taking in furtherance of aiding and abetting a crime. That's what we believe the video shows, and that any reasonable officer would believe that's what the video shows. And that's what we need to show in order to establish that we're in trouble. And you think this court can make that determination in the first instance with Heller's court? I do. All right. Would you have an objection to sending this back and having the judge make a determination of whether there was probable cause independent of the affidavit? I would... I guess I would not have an objection to do that. I felt that... The judge, if he did so conclude, would then probably grant the immunity. It seems to me the district judge was insecure about immunity in the context of such a deficient affidavit. And so the question is, if the district judge saw the evidence and determined that the officers did have probable cause, then maybe immunity would follow. I would hope that it would, Your Honor, and I would not have any objection to it. All right. Thank you. We'll come down and recount. We'll come down and recount and then proceed to the next case.
judges: Roger L. Gregory, Paul V. Niemeyer, Pamela A. Harris